**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | §<br>§ | |
| vs. | § | CRIMINAL ACTION NO.: 3:25-54-MGL |
| | § | |
| MOHAMMAD EBRAHIM TORKI HARCHEGANI,<br>Defendant. | §<br>§<br>§ | |

**MEMORANDUM AND OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR A NEW TRIAL**

## I. INTRODUCTION

Pending before the Court is Defendant Mohammad Ebrahim Torki Harchegani's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, along with his request for a hearing on his motion.

Having carefully considered the motion, the government's response, the record, and the applicable law, it is the judgment of the Court the motion will be denied and a hearing is unnecessary.

## II. FACTUAL AND PROCEDURAL HISTORY

In January 2025, a federal grand jury indicted Harchegani for attempted coercion or enticement of a minor in violation of 18 U.S.C. § 2422(b). The Magistrate Judge determined it was necessary to detain him pending trial. After jury selection on March 26, 2026, this Court held a hearing on May 11, 2026, concerning Harchegani's motion in limine. Most of the motion was

resolved at the hearing, and the only remaining portion was Harchegani's argument in opposition to the government's use of certain visual aids which will be addressed in more detail below. On May 12, 2024, the Court filed a written order denying the motion in limine in this regard.

Trial proceeded before this Court and a jury on May 13–15, 2026. At trial, by way of summary, the government introduced evidence showing the following: Harchegani engaged in online and text communications with an undercover officer, Jordan Smith, of the Anderson County Sheriff's Office. In the conversations, Smith adopted a persona of a fourteen-year-old girl named Zoe. Posing as Zoe, Smith told Harchegani Zoe's age was fourteen and sent him several photographs of what appear to be a fourteen-year-old child.

Their conversation began on an online dating service called Badoo, but it relatively quickly moved to text message. Investigators testified this was in part because Badoo has a policy of banning minors' accounts, so when Zoe revealed her age, her account was likely to be shutdown. Zoe's account was later banned, and the messages sent through Badoo were lost.

The text conversations, however, were available at trial and were introduced into evidence. Smith had recorded all of the messages on his device, and Harchegani's sent messages were later recovered from his phone. The conversations revealed Harchegani sent numerous sexually explicit messages to Zoe over multiple days graphically describing his intentions to engage in sexual activity with Zoe.

Ultimately, Harchegani travelled to an address Zoe provided after she invited him over and indicated she would be home alone, clearly for the purpose of engaging in unlawful sexual activities. On the way, Harchegani stopped at a McDonald's and picked up a meal for Zoe at her request. When Harchegani arrived at the home, he was immediately arrested by a team of officers. The officers also seized and then lawfully searched his phone.

The jury found Harchegani guilty as charged. Following the verdict, Harchegani timely filed the instant motion for a new trial. The government filed its response to the motion, and Harchegani declined to file a reply.

Other facts and procedural history will be addressed below as relevant.

## III. LEGAL STANDARD

"A district court may, in its discretion, award a new trial 'if the interest of justice so requires.'" *United States v. Singh*, 518 F.3d 236, 249 (4th Cir. 2008) (quoting Fed. R. Crim. P. 33(a)). The Court "'should exercise its discretion to award a new trial sparingly,' and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006) (quoting *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003)).

## IV. DISCUSSION AND ANALYSIS

### *A. Whether Harchegani's leg restraints warrant a new trial*

First, Harchegani argues he was improperly shackled during jury selection, thus warranting a new trial. He previously filed a motion to discharge the jury on this same basis, and the Court denied that motion. He raises the same arguments again, and the Court rejects them for the reasons previously given.

In summary, the Court firmly believes jurors were unable to see his restraints and in fact did not see them. Further, given the nature of the offense, Harchegani's circumstances, and the circumstances of jury selection, there was an increased need for security in the courtroom given the large number of people present and their movements around the room during voir dire. Finally, at Harchegani's earlier detention hearing, the Magistrate Judge determined it was necessary to

detain him prior to trial to protect the community, and this Court believes the same reasons for his detention justify his restraint in the courtroom.

Harchegani's legal support is inapposite. In *Deck v. Missouri*, 544 U.S. 622 (2005), the Court invalidated a death penalty sentencing proceeding where the defendant was restrained the entire time in leg irons, handcuffs, and a belly chain, all easily visible to the jury. But a belly chain throughout the sentencing hearing is obviously different from the circumstances here where the jurors were unable to see the simple leg restraints—which were hidden under a table and his pantlegs—during jury selection. Further, the trial was six weeks after jury selection, so any potential undue prejudice from seeing his legs restrained was almost certainly forgotten over the intervening period.

In *United States v. Samuel*, 431 F.2d 610 (4th Cir. 1970), the Fourth Circuit required further explanation from the district court as to why it had required the defendant "to appear continuously before the jury while handcuffed, even while testifying." 431 F.2d at 614. Yet again, appearing in handcuffs in front of the jury while testifying is easily distinguished from the circumstances in this case for the same reasons *Deck* is distinguishable.

The Court declines to grant Harchegani's motion on this basis for the reasons given previously and those discussed herein.

***B. Whether Jacqueline Hamelryck's testimony warrants a new trial***

At trial the Court permitted, over Harchegani's objection, portions of Jacqueline Hamelryck's testimony, the lead investigator in the case. The challenged portions of her testimony largely consisted of a review of the text messages exchanged between Harchegani and Smith/Zoe.

In the motion, Harchegani argues Hamelryck's testimony was improper lay opinion. He fails, however, to object to any particular testimony, nor does he direct the Court to any specific

alleged opinion. Because the entirety of her testimony, taken as a whole, is unobjectionable, this failure renders this ground for relief too general and non-specific to warrant a new trial.

Hamelryck's testimony spans over sixty pages of the trial transcript, and the Court is unable and unwilling to comb the record in an attempt to raise any specific arguments on Harchegani's behalf. To the extent he raised particular objections at trial, the Court stands by its decisions overruling those objections.

Additionally, to the extent any individual piece of testimony perhaps could have been excluded, there is ample evidence in the record rendering it cumulative and overwhelming evidence supporting the jury's verdict. Thus, any error was harmless. Harchegani texted who he believed was a fourteen-year-old girl, he agreed to meet her at her home alone for the clear and express purpose of engaging in unlawful sexual activities, and he then went to the address she provided at the time agreed upon.

Even if any of Hamelryck's testimony was improper, the Court concludes this is hardly a case where the "evidence 'weighs heavily' against" Harchegani's conviction. *Smith*, 451 F.3d at 217 (quoting *Perry*, 335 F.3d at 320)). Therefore, the Court declines to order a new trial on this basis.

***C. Whether Adam Creech's testimony warrants a new trial***

Harchegani argues this Court also erred "because the text conversations at issue were admitted through Adam Creech, an officer who trained the undercover officer, rather than the actual participant in the conversation." Motion at 4. He relies on *United States v. Johnson*, 617 F.3d 286 (4th Cir. 2010), in which the Fourth Circuit reversed the defendant's conviction in part because an officer "did not testify to directly observing the surveillance or even listening to all of the relevant calls in question." 617 at 293. Thus, the testimony "should have been considered that

of an expert" because "[n]one of th[e] second-hand information qualifies as the foundational personal perception needed under Rule 701." *Id.*

The government contends Creech's testimony was proper because it was "based on his real-time observation of the operation as it pertained to Harchegani." Response at 13. It continues: "Creech was monitoring the text messages between Harchegani and the undercover for quality control . . . ." Response at 13.

The Court agrees with the government because Creech's real-time observation distinguishes this case from *Johnson*. There, the agent was permitted to testify regarding previously recorded wiretap phone calls he listened to only after the calls concluded. 617 F.3d at 289. In contrast, Creech testified he was present and active in the investigation at the time Smith, posing as Zoe, was chatting with Harchegani, and he reviewed the conversation as it went. Thus, the testimony was based on Creech's firsthand knowledge.

To the extent Harchegani also challenges Creech's foundation for the chats as exhibits, because he was present in the room during the exchanges, he could authenticate them based on personal knowledge. *See* Fed. R. Evid. 901 (providing "[t]estimony that an item is what it is claimed to be" by a witness with knowledge is sufficient authentication).

Harchegani also challenges the testimony as improper vouching and bolstering. He complains of Creech's testimony regarding "his training of undercover chatters and eliciting testimony that he reviewed messages for quality control." Motion at 4.

The Court disagrees because Creech's testimony appropriately placed the full context of the undercover operation before the jury. Creech testified he trained Smith in the proper procedures for these types of investigations. Then, as this operation unfolded, he actively monitored Smith's conduct and engaged in the investigation of Harchegani. Testimony describing conduct and actions he took—even as it relates to other witnesses—fails to amount to bolstering.

To the extent it renders Smith's testimony more believable, it does so not because Creech simply said it is believable, but because actions they both took renders it more likely to be true. *See United States v. Lewis*, 10 F.3d 1086, 1089 (4th Cir. 1993) (holding testimony "about the investigative techniques employed . . . is not objectionable" as improper vouching). !

For all of these reasons, Harchegani has failed to demonstrate a new trial is warranted based on Creech's trial testimony.

***D. Whether it was necessary to permit Harchegani to cross-examine Smith about his conversations with other suspects***

At trial the government introduced Exhibit 10, a screen-recording of Smith's device showing his text conversation with Harchegani. The recording also showed brief fragments of Smith's conversations with other potential suspects. Harchegani's next ground for relief relates to two of those fragments which are visible in the sidebar of the messaging app.

One of those chats showed the last message was potentially from Zoe and read, "Are you trying to get laid? Lol." Then, during the screen-recording, another message came in which could be read only in part: "As I mentioned before, just loo . . ." At trial, the Court prevented Harchegani from probing into those fragments.

Harchegani relies on Smith's testimony he was trained to allow the suspect to bring up sex as a topic of conversation rather than mention it first himself. With this context, Harchegani contends the message fragments "demonstrate both that Officer Smith in fact initiated the topic of sex with his targets and that he did so after they told him that they were not primarily interested in sex." Motion at 5. He continues: "This contradicts Officer Smith's testimony to the jury that the opposite was true and that he would not have initiated the topic of sex with Dr. Harchegani in those initial messages on the app." Motion at 5.

The government argues the partial texts are merely "two out-of-context messages from an ancillary conversation in which Harchegani did not participate and had no knowledge[.]" Response at 16. In its view, the inquiry was properly excluded as irrelevant and unimportant under Rules 401, 402, and 403 of the Federal Rules of Evidence.

The Court prevented the inquiry because the messages were from separate conversations with other suspects and entirely unrelated to this case. Asking the jury to weigh Smith's actions investigating other people would have been fruitless and risk unnecessary confusion.

Even if the line of questioning had been pursued, it would have been inconsequential because it fails to undermine the explicit nature of the texts themselves. The messages put into evidence show Harchegani actively engaging in sexual conversations with Zoe over multiple days. Further, and at a minimum, the second morning of the investigation Harchegani texted Zoe first. After they exchanged brief and innocuous pleasantries, Zoe asked, "So what are you up to today?" Harchegani responded, "Anything you enjoy. I'm a bit bored and horny." He then proceeded to engage in further sexually explicit messages with someone he believed was fourteen years old.

Any suggestion Zoe may have "brought up sex"—to whatever extent it is legally important—is immaterial given Harchegani's clear, subsequent conduct. Based on the texts in evidence, the jury would have unquestionably reached the same result regardless of any testimony Smith may have provided about the messages sent to other suspects and regardless of whether Zoe was the first to bring sex up with Harchegani.

Harchegani's reliance on *Davis v. Alaska*, 415 U.S. 308 (1974), is misplaced. There, the defendant was precluded from cross-examining a witness about a potential motive for accusing the defendant, specifically to deflect suspicion away from himself. 415 U.S. at 311. The suspicion was based on the witness's earlier, juvenile convictions, but that record was presumptively confidential by state statute. *Id.*

When the witnesses expressed he was "unconcern[ed] over possible police suspicion" and "categorical[ly] deni[ed] ever having been the subject of any similar law-enforcement interrogation," the "answer [could] be regarded as highly suspect at the very least." 415 U.S. at 313-14. The foreclosed testimony concerned a plainly "relevant line of inquiry," and therefore the Supreme Court noted "[i]t would be difficult to conceive of a situation more clearly illustrating the need for cross-examination." 415 U.S. at 314.

This case lacks the same circumstances and rationale supporting the Supreme Court's decision in *Davis*. First, the Court prevented this line of inquiry in the ordinary exercise of discretion under the Rules of Evidence rather than based on a categorical statutory bar. The probative value of the inquiry was virtually nonexistent, and the risk of confusing the jury and wasting time substantially outweighed any potential value. It was therefore properly excluded under Rules 401, 402, and 403.

Second, this inquiry was far less important than that in *Davis*. Questioning a witness who might have been a suspect and potentially lied under oath about that suspicion is facially different from Smith's testimony. Such a probable potential motive to misrepresent "clearly illustrat[es] the need for cross-examination," *id.*, while the fragments of a conversation with an unrelated suspect in this case fail to do so.

For these reasons and those provided at trial, the Court is firmly convinced the inquiry would have been entirely insignificant and a new trial is unwarranted based on this ground.

***E. Whether photographs from Harchegani's phone warrant a new trial***

Harchegani's pretrial motion in limine asked the Court to exclude, among other things, several photographs recovered from his cell phone. The Court denied his motion prior to trial and again rejected the argument when he renewed his objection during trial.

The photos introduced were of Harchegani's Iranian passport, of him with his wife, and of him wearing an Iranian flag. He contends now, as he did prior to trial, "potential prejudice . . . could arise from highlighting Dr. Harchegani's Iranian nationality, marital status, and cultural/ethnic background." Motion at 6.

There was extensive discussion of these photographs before and during trial, and the Court concluded they were admissible. In the context of the case, the government was obligated to prove Harchegani was the one who possessed and used the phone to message Zoe. The fact he conceded as much in his opening argument fails to entirely eliminate the probative value of the photographs which tended to prove the point.

Because the risk of undue prejudice was minimal, the evidence was properly admitted. For this reason and those previously provided, the Court is unable to say there was any error and a new trial is unnecessary on this basis.

***F. Whether a new trial is necessary due to the illustrative aids***

Harchegani's motion in limine also sought to prevent the government from using illustrative aids representing the text messages between Harchegani and Zoe. By written order dated May 12, 2026, the Court denied the motion because the aids would be helpful to the jury in reviewing the messages and because the alleged undue prejudice was insignificant. During trial, Harchegani renewed his arguments and the Court again ruled the aids were permissible under Rule 107 of the Federal Rules of Evidence.

Here, Harchegani "renews [his] arguments from the motion in limine, oral argument on the motion, and trial arguments[.]" Motion at 7. The Court continues to believe use of the illustrative aids were proper and any risk of unfair prejudice was easily and substantially outweighed by their legitimate use clarifying the messages for both the Court and the jury. This ground for relief will therefore be rejected for the reasons given at trial and in the prior order.

### *G. Whether the government's trial brief warrants a new trial*

Harchegani's next ground for a new trial contends the Court improperly accepted and considered the government's ex parte pretrial brief. The brief is Attachment C to the government's response. It is twenty-six pages and provides an overview of the general facts of the case, the nature of the charge, and the government's position on several issues it anticipated could arise.

At trial, Harchegani made a motion for a mistrial on the basis of the brief on the last day of trial, asserting he learned of it that morning. He asserted then, as he does now, it violated his due process rights and his right to the effective assistance of counsel.

Harchegani first relies on *RZS Holdings AVV v. PDVSA Petroleo S.A.*, 506 F.3d 350 (4th Cir. 2007), in which the Fourth Circuit stated, "It is settled beyond peradventure that, in our system of justice, ex parte judicial proceedings . . . are greatly disfavored." 506 F.3d at 356. Critically, however, *RZS Holdings* concerned "ex parte judicial proceedings" where the district court "ruled against RSZ on the merits of the case" when it was unrepresented by counsel and its other representatives were prevented from speaking on its behalf. *Id.*

The circumstances here are dissimilar. At every stage of these proceedings, when procedural and substantive rulings were made, Harchegani was represented by counsel and both he and counsel were present. *RZS Holdings*, therefore, is inconsequential.

Second, Harchegani relies on *United States v. Earley*, 746 F.2d 412 (8th Cir. 1984), where the Eighth Circuit found the government's ex parte pretrial brief was "improper." 746 F.2d at 417. Most importantly, however, that Court also held the defendant was "entitled to no relief absent a showing of specific prejudice." *Id.* Many other circuits have reached similar conclusions: prejudice is necessary to warrant vacating an otherwise valid conviction due to an ex parte communication. *See, e.g.*, *United States v. Hackett*, 638 F.2d 1179, 1188 (9th Cir. 1980) (affirming conviction because "no prejudice" followed an ex parte meeting); *Haller v. Robbins*, 409 F.2d 857,

860 (1st Cir. 1969) (placing "the burden of proving lack of prejudice" on the state following an ex parte communication); *United States v. Minsky*, 963 F.2d 870, 874 (6th Cir. 1992) (same).

The Fourth Circuit has never considered an issue like this on similar facts. Nonetheless, it has similarly found an ex parte communication harmless and declined to reverse a conviction following the same allegations Harchegani raises here under the Due Process Clause and his right to the effective assistance of counsel. *United States v. Rhynes*, 196 F.3d 207 (4th Cir. 1999), *opinion vacated in unrelated part on reh'g en banc*, 218 F.3d 310 (4th Cir. 2000).

Therefore, the Court will consider whether Harchegani was prejudiced by the pretrial brief. First, the brief outlined the government's factual contentions and expected testimony, all of which had been previously disclosed to Harchegani. The Court is unable to imagine how this forecasting could have prejudiced Harchegani given the stated facts were relatively cursory, essentially articulated in opening statements, and ultimately demonstrated by testimony and other proof.

Second, the government outlined the elements of the offense. This is helpful to the Court for understanding the different purposes for which evidence might be produced and predicting how the trial might proceed. Given Harchegani separately submitted ex parte his proposed jury instruction, there is little prejudice, if any, on this point because he had an opportunity to present on the same issue. Moreover, when the Court was later preparing jury instructions, that discussion between the Court and the parties happened on the record in open court. Harchegani had full opportunity to consider the government's arguments, rebut them, and present his own position on the elements of the offense.

Finally, the brief addressed the government's position on some anticipated issues which it believed might arise at trial. Some of those issues never arose, and when other issues did arise, just as with the elements of the offense, Harchegani was given the opportunity to respond to the government's arguments and to make his own arguments. Any inference he alleges about potential

undue influence on the Court is based on speculation rather than evidence or specific reasons. The Court is firmly convinced of its rulings and is absolutely certain this brief was without effect on its analysis.

Considering all of this together, any potential impact on the case was minimal and ameliorated by the subsequent course of trial. The Court is unpersuaded by Harchegani's alleged theoretical prejudice the Eighth Circuit considered in *Earley*.

Most importantly, however, is the evidence produced against Harchegani. As the Court previously explained, the government produced virtually unchallenged evidence demonstrating Harchegani deliberately and expressly messaged someone he thought was fourteen years old with the goal of engaging in unlawful sexual conduct. The evidence against him was overwhelming, and the jury found it convincing. Therefore, the Court is unpersuaded he was prejudiced by any allegedly improper communication, and the Court will decline to grant him a new trial on this basis.

***H. Whether the jury instructions warrant a new trial***

As the Court noted, prior to trial Harchegani provided the Court with his proposed jury instructions ex parte under Local Criminal Rule 26.04(B). The requested instructions are attached to the government's response to this motion as Attachment D.

In the current motion, Harchegani writes: "The Defense reasserts its arguments for its proposed instructions that were provided both orally and in writing. It also reasserts its objections to the instructions that were given." Motion at 9.

Again, for the most part, Harchegani fails to raise any new arguments or even to specifically articulate the instructions on which he bases his objections. As such, further discussion by the Court is unwarranted because it stands by its earlier rulings for the reasons provided at the time. Specifically, the Court declined to provide the requested charges because

they were either adequately covered by other instructions or were unsupported by the record or the law.

Rule 33 motion requires the movant to identify a basis upon which the Court should exercise its discretion to order another trial. A wholesale incorporation of prior objections fails to supply any independent reason for doing so, and as such his broad complaint fails to persuade the Court it should do so on this motion.

The only specific argument Harchegani does make now reasserts his belief "the knowledge definition provided by the court [was] confusing" and "likely to mislead the jury into believing a general intent standard could satisfy the specific intent/purpose requirements under the statute." Motion at 9.

The government asserts the Court's instruction defining attempt sufficiently and correctly informed the jury of the necessary mental state for the offense. Thus, in its view, the instructions were correct and a new trial is unwarranted.

The Court agrees with the government. The jury was instructed it could find Harchegani guilty only if it was proven beyond a reasonable doubt he "intended to persuade, induce, entice, or coerce a minor to engage in sexual activity." Trial Transcript, vol. 3, p. 473, ll. 3-6. This correctly and clearly conveys to the jury the specific intent requirement sought by Harchegani. His concern the jury may have concluded some lesser mens rea could support a conviction is unwarranted.

In the motion Harchegani also challenges this Court's denial of his requests to make his requested jury instructions an exhibit and "part of the record for appellate purposes." Motion at 9. It is inconceivable how this alleged error could justify a new trial. Further, as noted, the government included the requested instructions as an exhibit in its response to this motion, so it is now part of the record.

For all of these reasons, this alleged ground for relief will be denied.

### *I. Whether Harchegani's catch-all grounds warrant a new trial*

As ground nine of the motion, Harchegani "renews all other motions and objections that were raised prior to trail, during the trial, and post-trial." Motion at 10. The Court stands by all of its prior rulings for the reasons given at those times. Further discussion is unnecessary. This ground for relief will be denied.

Ground ten of Harchegani's motion argues a "new trial should also be granted due to the cumulative effect of these errors." Motion at 10. Again, the Court maintains there were no errors in its rulings.

Regardless, however, even assuming there was error, the Court concludes any cumulative effect was minimal and harmless beyond a reasonable doubt, even considered together. The evidence against Harchegani was overwhelming, as thoroughly explained above. Therefore, this ground for relief will be denied, too.

## V. CONCLUSION

After careful review of the motion, the response, the record, and the relevant law, Harchegani's motion is **DENIED** for the reasons given herein and previously provided. He has failed to demonstrate sufficient circumstances or errors warranting a new trial.

The Court also concludes a hearing on this motion is unnecessary. All of the grounds raised by the motion relate to rulings previously made after full discussion on the record, and the briefs adequately addressed the merits of the issues. A hearing would be without any additional value. Thus, Harchegani's request for a hearing is also **DENIED**.

**IT IS SO ORDERED.**

Signed this 29th day of October 2026, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE